Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on 27 January 1997.
3. American Protection Insurance Company is the carrier at risk.
4. Plaintiffs average weekly wage is to be determined by the Industrial Commission Form 22, admitted into evidence as Stipulated Exhibit #3.
5. Plaintiffs 20 March 1997 recorded statement is admitted into evidence as Stipulated Exhibit #3.
6. Plaintiffs medicals regarding this claim, received at the Commission 22 September 1999 and 13 October 1999 are admitted into evidence.
7. All parties have been correctly designated and there are no issues as to misjoinder or non-joinder of parties.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. Ariana Pancaldo and Alan Charles Gorrod are ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
 ***********
Based upon all the competent evidence adduced at the hearing before the Deputy Commissioner, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On 27 January 1997, plaintiff was a 24 year old female employed by defendant-employer as a finishing operator. This position had five basic duties: sewing, plying, rolling, wrapping and impervious packaging. Plaintiff rotated through the various tasks every hour and a half to an hour and 45 minutes. Plaintiff received two ten-minute breaks and one twenty-minute lunch break each day. Plaintiff had been employed in this capacity since June 1996.
2. Although plaintiff rotated through each of her five job duties every day, all the duties consisted primarily of repetitive arm, hand and/or wrist motions.
3. On or about the week of 27 January 1997, plaintiff began experiencing burning pain in her left shoulder and swelling in her left wrist. Prior to the onset of pain, plaintiff had filled a large order at work which caused her to continuously perform one job duty longer than usual.
4. Plaintiff notified her supervisor, Jack Kernaskis, that her left shoulder and wrist were hurting and she wanted to see a doctor. Her supervisor took her to Jim Adams, the plant manager, who sent plaintiff to Doctors Urgent Care. Plaintiff sought treatment there on 5 February 1997.
5. Doctors Urgent Care diagnosed plaintiff with a shoulder strain and tenosynovitis. Plaintiff returned to work with her left arm in a sling. Plaintiff was assigned to light duty work for defendant-employer.
6. Although performing modified jobs, plaintiffs pain continued. Defendant-employer sent plaintiff to Dr. Chris Smith of Burlington Orthopedics and Hand Center. Dr. Smith diagnosed plaintiff with bursitis of the left shoulder and first dorsal extensor tendinitis. Dr. Smith released plaintiff to light duty with a two pound lifting and gripping limitation. Plaintiff again went back to light duty with defendant-employer.
7. Plaintiff next sought treatment from Dr. Ariana Pancaldo at Prospect Hill Community Health Center on 24 February 1997. Dr. Pancaldo had treated plaintiff prior to this for unrelated complaints, but 24 February 1997 was the first time plaintiff complained of problems with her hands and shoulder.
8. Dr. Pancaldo diagnosed plaintiff with left carpal tunnel syndrome, improving left shoulder bursitis, and improving left extension tendinitis (also referred to as epicondylitis by Dr. Pancaldo). Dr. Pancaldo released plaintiff to return to light duty with restrictions of not performing any activity requiring repetitive bending and straightening of her wrists. Plaintiff did not return to light duty.
9. Plaintiff returned to Dr. Pancaldo on 5 March 1997. At that time, a Phalens test was positive on the right. Although plaintiff had a good range of motion in her shoulder and less tenderness in that area, her epicondylitis and carpal tunnel problems had not resolved. Dr. Pancaldo ordered physical therapy and recommended that plaintiff should be out of work for two weeks.
10. On 19 March 1997, plaintiff still had tenderness over the extensor tendons but no numbness. Dr. Pancaldo recommended that plaintiff remain out of work for an additional two weeks.
11. On 4 April 1997, plaintiffs carpal tunnel symptoms had improved, but she still had bilateral epicondylitis. Dr. Pancaldo excused plaintiff from work for an additional month.
12. During the time plaintiff was out of work attempting to recover from her carpal tunnel syndrome and epicondylitis, defendant-employer informed her by letter that they did not need her anymore. Plaintiff never returned to work for defendant-employer.
13. In June 1997, plaintiff found work at a Biscuitville restaurant. Plaintiffs duties included running a cash register with her right hand and filling customer orders at the drive-through.
14. In August 1997, plaintiffs left arm symptoms had increased. Due to the increased swelling and aching, plaintiff requested a referral to an orthopedist. Dr. Pancaldo referred plaintiff to UNC Orthopedics where she sought treatment from Dr. Lachiewicz and Dr. Piedrahita.
15. The examination conducted by Drs. Lachiewicz and Peidrahita resulted in a diagnosis of carpal tunnel syndrome. It does not appear that these doctors found that plaintiff suffered from epicondylitis. The examination of 19 September 1997 revealed negative Tinel signs, but positive Phalen signs for plaintiffs left hand. Nerve conduction tests conducted on 11 September 1997 revealed median mononeuropathy at plaintiffs left wrist. Dr. Lachiewicz recommended wrist splints and non-steroid therapy. Plaintiffs last treatment submitted as part of the record was 19 September 1997. There is insufficient medical evidence of record to determine whether plaintiff has reached maximum medical improvement with respect to her left wrist carpal tunnel syndrome.
16. The greater weight of the medical evidence is that plaintiffs job duties at defendant-employer caused or significantly contributed to her left carpal tunnel syndrome. Plaintiff had no carpal tunnel symptoms prior to working for defendant-employer.
17. Plaintiffs employment at defendant-employer placed plaintiff at an increased risk of acquiring and aggravating carpal tunnel syndrome as compared to members of the general public not so employed. The Full Commission places greater weight on the opinions of Dr. Ariana Pancaldo than those of Mr. Alan Gorrod, an ergonomic analyst, with respect to causation and increased risk.
18. Plaintiffs last actual workday at defendant-employer was 20 February 1997. Although released to perform light duty, plaintiff missed some time from work after 20 February 1997 due to attending a court case. Plaintiff was not completely excused from work until 5 March 1997. As a result of plaintiffs occupational disease, plaintiff was unable to work or earn wages from 5 March 1997 through 1 June 1997. In June 1997, plaintiff began earning $5.75 per hour for twenty to thirty hours per week. Later this amount was increased to $6.00 per hour. Plaintiff earned approximately $7.30 per hour for forty hours per week with defendant-employer.
19. Plaintiffs average weekly wage pursuant to an Industrial Commission Form 22 in January 1997 was $260.14, yielding a compensation rate of $173.44 per week.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiffs left wrist carpal tunnel syndrome and the subsequent aggravation of the condition was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer, and is not an ordinary disease of life to which the general public so employed is equally exposed. Therefore, plaintiffs carpal tunnel syndrome is an occupational disease as defined by the Act. N.C. Gen. Stat. 97-53(13).
2. As a result of her contraction of left wrist carpal tunnel syndrome, an occupational disease, plaintiff is entitled to temporary total disability from 5 March 1997 through 1 June 1997 at her compensation rate of $173.44 per week. N.C. Gen. Stat. 97-29.
3. As of the date of this Opinion and Award, the evidence is insufficient to determine whether plaintiff had reached maximum medical improvement. Therefore, plaintiffs right to elect between benefits under N.C. Gen. Stat. 97-30 or 97-31 is reserved.
4. Plaintiff is entitled to have defendants provide all medical treatment arising from this compensable occupational disease to the extent it tends to effect a cure, give relief or lessen plaintiffs disability. N.C. Gen. Stat. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability at a compensation rate of $173.44 per week from 5 March 1997 through 1 June 1997. Said amount shall be payable in a lump sum, subject to a reasonable attorneys fee.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable occupational disease, when bills for the same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedure.
3. A reasonable attorneys fee of 25% of the compensation due to plaintiff under Paragraph 1 shall be deducted from the sum due and paid directly to plaintiffs counsel.
4. Defendants shall pay the costs.
This the ___ day of May, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ RENE C. RIGGSBEE COMMISSIONER
BSB:jbd